IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

FIRST TRINITY CAPITAL CORPORATION                                              PLAINTIFF

V.                                              CIVIL ACTION NO. 2:12-CV-156-SA-SAA

WESTERN WORLD INSURANCE GROUP, INC.,
and CRUMP INSURANCE SERVICES, INC.                                   DEFENDANTS

MEMORANDUM OPINION GRANTING SUMMARY JUDGMENT

Presently before the Court are Defendant Crump Insurance Services Inc.'s Motion for

Summary Judgment [93] and Plaintiff's Motion to Substitute Exhibit [100].  After reviewing the

motions, responses, and applicable legal authority, the Court finds that judgment in favor of

Defendant is appropriate and Defendant's Motion is therefore GRANTED.

FACTUAL AND PROCEDURAL BACKGROUND

 This specific cause arises out of a dispute regarding a premium finance agreement

allegedly entered into between Running and Rolling Trucking, Inc. ("Running and Rolling") and

First Trinity Capital Corporation ("First Trinity") that was purportedly consummated in order

Running and Rolling to finance an insurance policy issued by Western World Insurance Group,

Inc. ("Western World").  Plaintiff First Trinity, which is in the business of insurance premium

financing, typically advances the cost of an insurance policy on behalf of the insured before then

recouping that cost in incremental monthly installment payments made by the insured back to

First Trinity.  Under First Trinity's standard financing agreement, the insured grants First Trinity

a security interest in any unearned premiums and additionally grants First Trinity the power to

cancel the policy in the event the insured defaults on the monthly repayment obligations.

In the situation presently at bar, First Trinity bases its claim against Crump Insurance Services, Inc. ("Crump") on Crump's involvement as the purported general agent for Western World. Specifically, First Trinity contends that Western World, through its general agent Crump, issued a commercial insurance policy to Running and Rolling with effective dates of coverage from December 24, 2008 to December 24, 2009. According to Plaintiff, First Trinity financed the premium at issue at the behest of Jan Gunn, the owner of Central Mississippi Insurance ("CMI"). Specifically, First Trinity claims to have relied on a premium finance agreement forwarded by Gunn in which she purportedly represented that the Western World policy had been issued to Running and Rolling, that a down payment had been made on the policy, and that she agreed to pay the unearned premiums and unearned commissions to First Trinity in the event that the policy was cancelled or terminated. First Trinity further claims that Gunn served as Crump's agent under alternative theories of either actual or apparent authority.

What is made abundantly clear by Defendant's motion for summary judgment, however, is that the subject transaction is but one of a litany of apparently fraudulent transactions consummated by Gunn in an attempt to defraud numerous premium finance companies such as First Trinity. According to Crump, the aforementioned Running and Rolling policy was never actually issued by Western World, but was a sham devised by Gunn in an attempt to misappropriate the financed premium. Indeed, based on the undisputed record before the Court, after receiving the premium finance agreement from Gunn, First Trinity provided policy financing in the amount of $142,087.50.[1] First Trinity represents that it generally contacted the general agent to determine that an actual policy had been issued, but has proffered no additional evidence of any attempt to corroborate that the policy was verified before providing said

---

[1] Although First Trinity has not produced a check or bank draft for the amount financed, the Account Transaction List includes the amount financed for Running and Rolling's purported policy.

financing. After Running and Rolling failed to make the required premium repayments to First Trinity, Plaintiff sent Defendants a notice of cancellation and cancelled the purported policy effective July 15, 2009.

First Trinity subsequently filed the present action against Defendants Western World and Crump in an attempt to recoup $79,860.14 for all unearned premiums for the present policy. Plaintiff's amended complaint set forth numerous purported causes of action, including: breach of statutory law and negligence per se (Count One); breach of contract (Count Two); negligence (Count Three); fraud (Count Four); constructive trust (Count Five); actual and apparent authority (Count Six); ratification and estoppel (Count Seven); and punitive damages (Count 8).[2] Pursuant to an Agreed Judgment [89] entered by this Court on July 29, 2013, Western World Insurance was dismissed with prejudice from the current action. Crump thereafter filed the present Motion for Summary Judgment [93], seeking dismissal as to all of First Trinity's claims. In particular, Crump avers that Plaintiff's claims for breach of statutory law, negligence per se, and breach of contract must be dismissed because First Trinity is unable to establish the existence of the alleged Western World insurance policy, and that the remaining claims must be dismissed for lack of proof that Gunn was Crump's agent. The Court now turns to the merits of that motion.

<u>SUMMARY JUDGMENT STANDARD</u>

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when the evidence reveals both that there is no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party

---

[2] Crump also filed a counterclaim in conjunction with its original answer. The parties have since stipulated to the dismissal of those claims pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii).

who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Id. at 323, 106 S. Ct. 2548. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324, 106 S. Ct. 2548 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). When such contradictory facts exist, the Court may "not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). However, conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial. TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002); SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1997); Little, 37 F.3d at 1075.

## DISCUSSION AND ANALYSIS

### *Breach of Statutory Law and Negligence Per Se*

In support of Plaintiff's breach of statutory law and negligence per se theories, First Trinity argues that it held a perfected security interest in all unearned premiums for the alleged policy, and that Crump was under a statutory duty to return those unearned premiums once the policy was cancelled. Although First Trinity has not cited a particular statute in support of such

4

theory, it seems likely that Plaintiff bases its claim on Mississippi Code § 81-21-21, which mandates:

> Whenever a financed insurance contract is cancelled, the insurer shall return to the premium finance company as soon as reasonably possible whatever gross unearned premiums are due under the insurance contract, and also shall furnish to the premium finance company a report setting forth an itemization of the unearned premiums under the policy that includes a detailed mathematical summary of the computation of the return premium.

Miss. Code Ann. § 81-21-21. To this, Crump simply counters that, absent the existence of an actual insurance contract, there could be no unearned premiums and thus no violation of § 81-21-21, which by its own terms applies only "[w]henever a financed insurance contract is cancelled." See Insurasource, Inc. v. Phoenix Ins. Co., 912 F. Supp. 2d 433, 439-440 (S.D. Miss. 2012).

This precise issue was recently considered by another district court in Mississippi in another cause filed by First Trinity, which similarly arose out of Gunn's fraudulent scheme. There, despite many similarly presented arguments, the court ultimately held that First Trinity had failed to put forth sufficient evidence of the existence of the insurance contract and, as such, First Trinity's breach of statutory law and negligence per se claims were due to fail. First Trinity Capital Corp. v. Catlin Specialty Ins., 2013 WL 6230099, at * 3 (S.D. Miss. Dec. 2, 2013); see also First Trinity Capital Corp. v. Canal Indem. Ins. Co., 2014 WL 129802, at *4 (S.D. Miss. Jan. 10, 2014) (reaching a similar finding).

In Catlin, the court found insufficient evidence of a contract in spite of First Trinity's showing that the purported insured was an actual business with previous legitimate insurance dealings, that Gunn had represented the policy had actually been issued, that First Trinity had arguably sent a notice of premium financing but Crump had not informed First Trinity that no such policy was ever issued, and that First Trinity had made a blanket representation that the

5

policy would not have been financed without first contacting Crump regarding the legitimacy of the transaction. Id. at *4. Not surprisingly, First Trinity has lodged many of the same arguments here. As ably noted by the court in Catlin, however:

> None of this evidence cited by First Trinity, either alone or in combination, tends to establish that a policy was in fact issued. The fact that [Running and Rolling] was a legitimate company certainly does not. The fact that Gunn certified that a policy was issued is obviously insufficient to prove that a policy was issued. Moreover, even assuming that First Trinity notified Crump of the premium finance agreement for the purported [Running and Rolling] policy, Crump's failure to inform First Trinity that no such policy existed does not establish that a policy was issued.

Id. at *3. The only colorably relevant evidence submitted by First Trinity are statements from Clarence Zahn and Greg Zahn, agents of First Trinity, who testified that it was First Trinity's regular practice to communicate with the general agent identified in a premium finance agreement to verify the information included therein before actually financing the policy. Clarence Zahn also averred that at some unspecified time, he spoke with a representative of Crump who provided the policy number that he then handwrote on First Trinity's notice of cancellation.[3]

The Court finds that the actual testimony fails to live up to its billing. Notably, First Trinity's representation that "First Trinity would not have financed the Policy without first communicating with Crump and confirming the information provided by [Gunn] regarding the existence and issuance of the Policy" is belied by Greg Zahn's own admission. The following exchange is illuminating:

---

[3] With its response, First Trinity submitted an unsigned affidavit from Clarence Zahn, representing that Zahn was unavailable at that time and that it would move to substitute a signed affidavit once Zahn became available. First Trinity has since moved to substitute Zahn's signed affidavit for the previously submitted unsigned document. Although opposed by Defendant, Plaintiff's motion is GRANTED [100].

> A: Our procedure would have been to contact the general agent to make sure that a policy would have been in place. That was our procedure.
>
> Q: Do you know whether that procedure was followed?
>
> A: I can't testify to that.

Clarence Zahn, who was listed by Greg as someone who would have personal knowledge of the transaction at issue, similarly failed to represent that a notice had been sent for the specific Running and Rolling policy.

Additionally, as noted by the court in <u>Catlin</u>, First Trinity has produced no insurance policy, no application for a policy, no evidence of underwriting for a policy, no evidence from Western World regarding the issuance of a policy, and no evidence from Running and Rolling regarding the procurement of a policy. <u>Id.</u> As such, the Court determines that First Trinity has failed to establish a genuine dispute of material fact with regard to the existence of the insurance contract, which provides the basis for its breach of statutory law and negligence per se claims. Those claims are subsequently due to be dismissed. <u>See</u> <u>Little</u>, 37 F.3d at 1076 (holding that a dispute of material fact is not created by metaphysical doubt, conclusory allegations, or unsubstantiated assertions); <u>Brown v. CSC Logic, Inc.</u>, 82 F.3d 651, 658 (5th Cir. 1996) ("[g]uesswork and speculation simply cannot serve as a basis for sending a case to a jury").

*Breach of Contract*

Plaintiff's First Amended Complaint sets forth First Trinity's breach of contract theory as follows:

> When it financed Running & Rolling's premiums for the Policy, First Trinity stepped into the shoes of Running & Rolling for all payments and set-offs while leaving the insurer-insured relationship between Western World and Running & Rolling intact . . . First Trinity acquired, held and perfected a security interest in all unearned premiums in connection with the Policy when it

> funded the Policy on the aforesaid date . . . Upon cancellation of the Policy, Western World and Crump owed First Trinity all unearned premiums in connection therewith in the amount of $79,860.14.

To this count, Crump argues that it must similarly fail on the absence of an actual insurance policy. The Court finds Crump's position persuasive.

As articulated in <u>Catlin</u>, "[t]his claim depends on the existence of an underlying insurance policy, as well as on a valid premium finance agreement." 2013 WL 6230099, at *4 (citing <u>Phoenix Ins. Co.</u>, 912 F. Supp. 2d at 440 (noting that an identical claim "requires the existence of a valid insurance policy, providing [the insured] with the right to unearned premiums upon policy cancellation, and a valid agreement between [the premium finance company] and [the insured], allowing [the finance company] to recover any unearned premiums in place of [the insured]"). Indeed, because this Court has already found that Plaintiff has failed to create a genuine dispute of material fact as to the existence of the subject policy, summary judgment is similarly due in favor of Defendant as to this claim.

*Agency Contingent Claims*

First Trinity's remaining claims—negligence, fraud, constructive trust, actual and apparent authority, estoppel and ratification, and punitive damages—are contingent on Gunn's status as an agent of Crump. Accordingly, Crump seeks dismissal of these claims on the basis of lack of proof as to whether Gunn was acting as Crump's agent or had actual, implied, or apparent authority to act on behalf of Crump in regard to the purported issuance of the policy at issue. In response, First Trinity contends that there is ample evidence to support a finding that Gunn at least had apparent authority to act on Crump's behalf. Specifically, First Trinity puts great emphasis on the fact that one of Crump's forms identified CMI as its agent and that Crump placed "numerous insurance policies" through CMI.

8

Under Mississippi agency law:

> An agency relationship may be express or de facto. A de facto agency may be proven by the presence of three elements at the time of contracting: (1) "manifestation by the alleged principal, either by words or conduct, that the alleged agent is employed as such by the principal," (2) "the agent's acceptance of the arrangement," and (3) "the parties understood that the principal will control the undertaking."
>
> . . .
>
> Whether an agency relationship exists is "to be determined by the relations of the parties as they exist under their agreements or acts, with the question being ultimately one of intention . . . . If relations exist which will constitute an agency, it will be an agency whether the parties understood the exact nature of the relation or not. Moreover, the manner in which the parties designate the relationship is not controlling, and if an act done by one person in behalf of another is in its essential nature one of agency, the one is the agent of such other notwithstanding that he is not so called.

Stripling v. Guardian Entergy Exploration Co., 234 F.3d 863, 870 (5th Cir. 2000). In Insurasource, Inc v. Cowles & Connell of N.Y. Inc., another Mississippi district court had occasion to consider these principles in a markedly similar factual situation. 2011 WL 4397487, at*3 (S.D. Miss. Sept. 21, 2011).

There, the plaintiff was likewise in the business of financing insurance premiums and executed such transactions with a similar agreement. Id. at *1. At some point, the plaintiff was contacted by a third party insurance agency who sought the plaintiff's premium financing services. After the initial contact between the third party insurance agency and the plaintiff, the third party insurance agent entered into an agreement with the defendant, who was a general agent for a number of insurance companies for which it was authorized to bind and issue policies. Id. Under that agreement, the third party agency was authorized to submit insurance applications to the defendant and received a commission on policies ultimately placed with the defendant. Id. Much like the situation at bar, the plaintiff eventually financed a number of

policy premiums for which the defendant general agent claimed to have never received a premium and to have never bound policies. Id. The Plaintiff then filed suit after the defendant refused to remit the purported unearned premiums. Id.

In evaluating the defendant's motion to dismiss for lack of personal jurisdiction, the court was forced to consider whether the third party agency was the defendant's agent for purposes of the contested transactions. Id. at *3. Turning to the aforementioned agency principles, the court found that while the third party agency was able to submit applications for insurance to the defendant, it was not authorized to accept premium payments on the defendant's behalf and there was no evidence that defendant had represented to the plaintiff that the third-party agency should be treated as an agent of the defendant. Id.

According to the court, the financing agreements themselves provided no evidence that the third party agency acted on the defendant's behalf. Id. at *4. After all, "[t]he only parties other than [p]laintiff to sign the financing agreements were [the third party agency] and some of the primary insureds." Id. Further, in some of those contracts, a representative of the third party agency went so far as to sign off on behalf of the insured as an "authorized signatory." Id. And, although such agreements listed the defendant as the general agent and the third party agency as an agent, "there [was] no indication in the contracts themselves that either the insurance company or the general agent were parties to the negotiation, execution, or performance of the financing agreements." Id.

In the case presently before the Court, these factors tilt much the same way. Although First Trinity has produced a single form listing CMI under "Crump Agent Name" and another page of accounts listing CMI under the heading of "agency," it is clear that "the manner in which the parties designate the relationship is not controlling." Stripling, 234 F.3d at 870.

Additionally, there is no indication whatsoever that Crump was even a party to the premium financing agreement. As articulated in <u>Catlin</u>, First Trinity has failed to adduce "proof that Crump had any involvement in the solicitation, negotiation, execution, or performance of the financing agreement, or that it 'was in control of CMI/Gunn throughout the undertaking." 2013 WL 6230099 at *6. Therefore, as in <u>Catlin</u>, this Court finds that Plaintiff has failed to establish a genuine dispute of material fact as to whether Gunn had actual authority as Crump's agent. <u>See id.</u>

Alternatively, however, First Trinity argues that even if Gunn lacked actual authority, Gunn "had, at least, apparent authority to act on Crump's behalf." Under Mississippi law, "apparent authority exists when a reasonably prudent person, having knowledge of the nature and usages of the business involved, would be justified in supposing, based on the character of the duties entrusted to the agent, that the agent has the power he is assumed to have." <u>Mladineo v. Schmidt</u>, 52 So. 3d 1154, 1167 (Miss. 2010). In order to prevail under an apparent authority theory, the following three factors must be established: "(1) acts or conduct on the part of the principal indicating the agent's authority, (2) reasonable reliance on those acts, and (3) a detrimental change in position as a result of such reliance." <u>Id.</u>

First Trinity's apparent authority argument, which is contingent upon its assertion that "Crump itself routinely identifies CMI as its 'agent' on its own documents" and that "Crump placed numerous insurance policies through CMI every year from 2004 to 2009," has now been rejected by two other Mississippi district courts. <u>See Catlin</u>, 2013 WL 6230099, at *6; <u>Canal</u>, 2014 WL 129802, at *7. Moreover, although Plaintiff claims CMI/Gunn was "routinely" so identified, First Trinity has cited to only one such document. Additionally, although CMI/Gunn had previously placed policies through Crump, that factor "provides no indication as to the

nature or extent of CMI/Gunn's authority." Catlin, 2013 WL 6230099 at *6. After all, CMI's authority to solicit applications for insurance from potential policyholders and submit them to Crump does not equate with the authority to issue policies on behalf of Crump or otherwise bind Crump by its actions. Accordingly, and in consistency with the two other Mississippi district courts that have so far considered this precise issue, this Court finds that First Trinity has failed to create a triable issue of fact with regard to CMI/Gunn's apparent authority to act on behalf of Crump.

*Ratification and Estoppel*

Finally, First Trinity attempts to rely on the doctrines of ratification and estoppel to hold Crump liable. As recently articulated in Catlin, equitable estoppel under Mississippi law requires:

> Conduct and acts, language or silence, amounting to a representation or concealment of material facts, with knowledge or imputed knowledge of such facts, with the intent that representation or silence, or concealment be relied upon, with the other party's ignorance of the true facts, and reliance to his damage upon the representation or silence.

Catlin, 2013 WL 6230099, at *6 (quoting Helveston v. Lum Props. Ltd., 2 So. 3d 783, 787 (Miss. Ct. App. 2009)). As articulated there, no reasonable jury could find such reliance reasonable where the premium finance payments were released on the same day the notice was allegedly sent. Id. Here, Clarence Zahn's affidavit provides, "If the decision was made to finance a given policy, then First Trinity would send a Notice of Premium Finance to the general agent." Additionally, although the premium finance agreement is undated, the policy was purported effective as of December 23, 2008 and the premium was financed on December 23, 2008. Accordingly, Plaintiff has failed to create a genuine dispute of material fact with regard to reliance and its equitable estoppel theory has no merit.

On the other hand, the theory of ratification is distinct and must be separately considered. Under Mississippi law, ratification is "the affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account, whereby the act, as to some or all persons is given effect as if originally authorized by him."  Barnes, Broom, Dallas & McLeod, PLLC v. Estate of Cappaert, 991 So. 2d 1209, 1212 (Miss. 2008).  Accordingly:

> Ratification does not arise by operation of law; rather, a person ratifies an act by (a) manifesting assent that the act shall affect that person's legal relations, or (b) conduct that justifies a reasonable assumption that the person so consents.  It is true that, under some circumstances, a principal's inaction can result in ratification, but only where the principal has notice that others will infer from his silence that he intends to manifest his assent to the act.

Northlake Dev. L.L.C. v. BankPlus, 60 So. 3d 792, 797 (Miss. 2011) (citations omitted).

In reliance on those principles, another Mississippi district court recently held that a genuine dispute of material fact regarding ratification precluded summary judgment where there was significant evidence that the defendant "knew that the [independent agent] had executed [a pertinent financing agreement], or would have known but for its own deliberate ignorance."  Insurasource, Inc., v. Fireman's Fund Ins. Co., 2012 WL 774934, at *6 (S.D. Miss. Mar. 8, 2012).  Significantly, however, the evidence there established that "it mailed notices of the premium finance agreement to [d]efendant at its correct address."  Id.  Additionally, the facts of that case showed that although the defendant "had no official policy regarding the receipt of such notices . . . its underwriters typically reviewed the notices to ensure that the policy numbers, effective dates, and premium amounts were correct."  Id.  In the event of a discrepancy, the defendant typically "sent a letter back to the premium financing company to advise of the discrepancy."  Id.

As the court recognized in that case:

> [I]n order that there be a ratification there must be a voluntary assumption of the unauthorized act either on full information or on less than full information if undertaken deliberately in disregard of the fact that all knowledge of the transaction available has not been obtained. <u>Green Acres Farms v. Brantley</u>, 651 So. 2d 525, 528–29 (Miss.1995)). Unless the purported principal deliberately disregards his own ignorance of relevant facts, his lack of knowledge renders any alleged ratification invalid. <u>Id.</u> at 530.

<u>Id.</u> at *5.

In the case at bar, Plaintiff has produced scant evidence of the purported notification of premium financing. First Trinity has glaringly failed to produce even a form copy of such purported notices and has also failed to provide any evidence regarding specific addresses to which those notices were sent or how they were generated. The testimony elicited by Plaintiff regarding the mailing of notice simply fails to create a genuine dispute of material fact. The only evidence cited by Plaintiff which in any way tends to support its theory of notification are a number of equivocal statements made by Clarence Zahn and Gregg Zahn. The following exchange with Gregg Zahn is illustrative:

> A: Our procedure would have been to contact the general agent to make sure that a policy would have been in place. That was our procedure.
>
> Q: Do you know whether that procedure was followed?
>
> A: I can't testify to that.
>
> . . .
>
> Q: Okay. All right. Do you have - - does First Trinity have any record that notices of financing relating to a Canal policy for CBR ever existed?
>
> A: I think I've answered that before. That is our normal practice to send one. I could not testify under oath whether that would be in this file or not when you're talking about thousands of documents.

14

. . .

> Q: And we talked about the methods of delivery of Notices of Intent to Cancel and Notices of Cancellation, but I don't think we discussed the method of delivery that was practiced, standard practice for First Trinity with regard to notices of financing. Was there a policy as to the method of delivery of notices of financing before August of 2009 by First Trinity?

> A: I mean, I can't remember. I can't tell you. I mean, Clarence could easily answer that.

As to Clarence Zahn, however, Plaintiff submitted only an affidavit regarding his knowledge. In that affidavit, Clarence averred, "If the decision was made to finance a given policy, then First Trinity would send a Notice of Premium Finance to the general agent. This practice was common during the premium finance industry in 2008 and 2009." However, he further noted, "In First Trinity's Hammond office, we did not maintain extensive documentation of our communications with the general agents as outlined above. In some but not all situations, we would simply make a notation on the inside of the file folder that we had verified the information with the general agent."

It therefore remains undisputed that First Trinity has produced no actual notice of premium financing for the pertinent policy, no evidence regarding the specifics of how or where such notice would have been sent, no averments regarding actually providing notice for the particular policy at hand, and no notations of providing such notice. Unlike the plaintiff in Fireman's Fund, First Trinity has failed to raise a genuine dispute of material fact regarding ratification. 2012 WL 774934, at *6; Little, 37 F.3d at 1076 (holding that a dispute of material fact is not created by metaphysical doubt, conclusory allegations, or unsubstantiated assertions). Whereas the Mississippi Supreme Court has held that a "[principal's] knowledge is an essential element" to ratification, this Court finds First Trinity has failed to create a genuine dispute of

material fact regarding Defendant's knowledge of the purported actions.  See Brantley, 651 So. 2d at 530 ("The principal, before a ratification becomes effectual against him, must be shown to have had previous knowledge of all the facts and circumstances in the case. . . .  And the principal's want of such knowledge, even if it arises from his own carelessness in inquiring or neglect in ascertaining facts, or from other causes, will render such ratification invalid.").  Accordingly, judgment is due in favor of Defendant as to this claim as well.

CONCLUSION

For the reasons set forth above, Crump's Motion for Summary Judgment [93] is hereby GRANTED.  Additionally, First Trinity's Motion to Substitute [100] is likewise GRANTED.  Judgment having been entered this day in favor of Defendant, this case is CLOSED.

SO ORDERED, this the 5th day of February, 2014.

**/s/ Sharion Aycock**
**U.S. DISTRICT JUDGE**